# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SCHWOEBEL, | ) |
| | ) |
| Plaintiff, | ) 2:06-cv-533 |
| v. | ) |
| | ) |
| CATHOLIC DIOCESE OF PITTSBURGH | ) |
| and ST. MARY OF THE ASSUMPTION | ) |
| CHURCH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Pending before the Court is Defendants' MOTION FOR SUMMARY JUDGMENT (Document No. 24). The parties have thoroughly briefed the issues (Document Nos. 25, 31, 34) and set forth their positions regarding the statement of material facts (Document Nos. 26, 30, 33). The motion is ripe for disposition.

### Background

This litigation involves the decision by St. Mary of the Assumption School ("St. Mary's"), a parochial school, to terminate the contract of Plaintiff James Schwoebel, who began teaching at St. Mary's in 1989. Schwoebel's employment was governed by an annual written contract which identified St. Mary of the Assumption as the "sole and exclusive Employer."[1]

The teacher Handbook states that teachers will be notified in writing by April 1 if their contract is not being renewed. After tenure is acquired, a teacher's contract must be renewed

---

[1] Plaintiff contends that the Catholic Diocese of Pittsburgh is also an "employer" based on his W-2 statements. The Court need not reach this issue.

unless a teacher is terminated for misconduct. Ultimate decision-making authority for hiring and terminating teachers rests with the pastor of the parish, in this case, Father John McCloskey.

During Plaintiff's employment, St. Mary's received numerous complaint letters from parents regarding various aspects of Schwoebel's performance, including calling students names, poor organization, unfair punishment, and confusing homework assignment practices. (Compiled in Exhibit D). Several parents informed St. Mary's that they were withdrawing, or considering withdrawing, their children from the school because Plaintiff would be their teacher. Seven complaint letters were received in 1996. Three complaint letters were received in 2002. At the end of the 2001-2002 school year, Schwoebel was informed that his contract was not going to be renewed for the 2002-2003 school year. However, in August, the school called him back.

In the April 2004 meeting of the St. Mary's School Advisory Council, as related in a letter dated August 18, 2004 from Darlene Scopel (the former principal) to Sister Mary Jo Mutschler, Department of Catholic Schools, "the parents were adamant about firing Mr. Schwoebel." However, Scopel held followup conferences with most of the families and Schwoebel was retained and put on a performance improvement plan.

More complaints were received during the 2004-2005 school year. On December 10, 2004, a parent complained that Schwoebel was making fun of and embarrassing their son in science class. In February 2005, another family met with Schwoebel and Principal Adrienne Ofcharsky to discuss an issue in which the child was punished by not being permitted to use the bathroom and to complain that Schwoebel was not signing the child's homework book daily, as

agreed.² The 2004-2005 Performance Appraisal rated Schwoebel as "Needs Improvement" in all of the following categories: Reflects Gospel values in speech and actions; Supports Diocesan and School policies; Is punctual in attendance and meeting professional obligations; Uses professional judgment in relationships with students, parents and other personnel; and Respects the dignity of every student through the use of proper language and voice control. There are handwritten comments on the evaluation citing specific objectionable conduct in these categories. The attached Teacher Documentation Form also cited Neglect of Duty, based on the issues described in the April 11, 2005 complaint letter.

On March 31, 2005, Ofcharsky and Father McCloskey sent Schwoebel written Notice that St. Mary's would not renew his contract for the 2005-2006 school year, pursuant to section 3.7 of the Handbook. The Notice stated that documentation for the decision would be provided at a future time. Schwoebel acknowledged receipt of this Notice on April 1, 2005.

On April 3, 2005, another parent wrote to explain why her sons transferred from St. Mary's to public school. The primary reasons did not involve Schwoebel but the parent explained, as an underlying reason, that Schwoebel had sexually fondled her thirty-five years earlier, when she was twelve years old.³ Between April 6, 2005 and April 11, 2005, the school

---

²The letter describing these incidents is dated April 11, 2005, which is after St. Mary's decided to not renew Schwoebel's contract.

³This was not the first accusation of inappropriate behavior. A parental complaint letter dated March 12, 2002, related an incident in which Schwoebel allegedly came up behind a girl drawing at the board and whispered either "we love you" or "I love you" in her ear. SM00764. Schwoebel authored a rebuttal letter on March 17, 2002, in which he explained that the student had just returned from a prolonged absence and was being teased by other students, when Plaintiff trying to reassure her by saying: "Don't worry about it, you will do fine. We love you." In May 2002, Schwoebel allegedly complimented a visiting teacher's nails, used both hands to mess up her hair, and then followed her into a classroom

staff submitted five letters to document several incidents in which Schwoebel complained about his lack of health insurance coverage in a disrespectful or inappropriate manner. (Compiled in Exhibit E).

On April 25, 2005, Father McCloskey sent Schwoebel a followup letter, informing him that he was being placed on "ADMINISTRATIVE LEAVE WITH PAY, effective immediately." His status was deemed "termination pending" and his pay for the remainder of the 2004-2005 school year consisted of salary only. McCloskey stated that the reason for these actions was "a sustained and persistent pattern of misconduct by you as a teacher."

The next day, April 26, 2005, McCloskey sent a letter to parents. Because Plaintiff contends that the letter is defamatory, it is quoted in full:

> Dear St. Mary's School Parent:
>
> You may be aware that there have been some rumors concerning the continued employment of one of our teachers, Mr. James Schwoebel. I am writing to tell you that Mr. Schwoebel is no longer a teacher at St. Mary's, effective April 25th. Arrangements have been made to cover his classes so that the children's education will continue as usual.
>
> One of the most difficult things about being a pastor and priest is that there are times when I cannot speak about a matter because of the need for confidentiality. Regretfully, this is one of those occasions. I am sure that others may be tempted to say all sorts of things, either things they believe they know, or things they speculate about. I can only ask for your understanding, your charity and your prayers for all concerned.
>
> Sincerely,
>
> Fr. John McCloskey OFM Cap.
> Pastor

On October 7, 2005, Plaintiff filed a charge of discrimination and supporting affidavit

---

and pulled the panty hose on her lower leg. (Exhibit F.)

with EEOC, alleging claims of age and gender discrimination arising out of his termination on April 25, 2005. By stipulation dated April 11, 2007, Plaintiff withdrew his age discrimination claim. Plaintiff does not allege a claim based on a hostile work environment.[4] Plaintiff's Response to Statement of Material Facts ¶ 48. This action followed. There are three counts remaining: gender discrimination based on Title VII and the Pennsylvania Human Relations Act ("PHRA") and defamation.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4]Plaintiff does allege numerous instances of disparate treatment during the time when Sister Baier and Ms. Bart served as principal, including being assigned to recess duty and outdoor gym on cold days, carrying boxes of supplies to the storage room, not being permitted to enter the restrooms or wear decorated sweatshirts, and being told to "be a man" when he complained.

248 (1986).  The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323.  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).  Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230.  When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Discussion

1. Gender Discrimination Claims

The relevant portion of Title VII provides:

**§ 2000e-2. Unlawful employment practices**

**(a) Employer practices.** It shall be an unlawful employment practice for an employer--
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

As an initial matter, the Court concludes that evaluating this claim of discrimination will not raise serious constitutional questions, as it does not implicate the validity or plausibility of any religious doctrine. The school's asserted reason for the termination was purely secular – a pattern of misconduct. *See Curay-Cramer v. Ursuline Academy of Wilmington,* 450 F.3d 130, 139 (3d Cir. 2006) (applying the *Catholic Bishop* framework and noting that many Title VII discrimination claims do not raise constitutional issues); *Geary v. Visitation of Blessed Virgin Mary Parish School*, 7 F.3d 324 (3d Cir. 1993) (ADEA case alleging pretext did not raise constitutional concerns). Although not dispositive, the Court also notes that Defendants have not raised this issue.

Under the familiar *McDonnell Douglas* burden-shifting framework, Plaintiff must first make out a *prima facie* case of discrimination. The elements of a prima facie case in this claim

7

of "reverse" gender discrimination by a male are governed by *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999). The Court of Appeals explained that a plaintiff need not present evidence of background circumstances to establish that the defendant is an "unusual employer" who discriminates against the majority. *Id.* at 158. Rather, to establish a prima facie case in the absence of direct evidence,[5] a plaintiff need only present "sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his [sex].'" *Id.* at 163.[6] If a prima facie case is established, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. If the employer proffers a legitimate reason for its action, the plaintiff must then show that the proffered legitimate reason is merely a pretext for discrimination. *Simpson v. Kay Jewelers Div. of Sterling, Inc.,* 142 F.3d 639, 644 n.5 (3d Cir. 1998).

To show pretext, plaintiff must point to some evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the discharge. *Id.* at 644; *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The Court may not second-guess the wisdom of the employer's decision, but may only consider

---

[5]The only comment in the record of this case that arguably might show a direct bias against male teachers was made by a non-decisionmaker thirteen years prior to Schwoebel's termination. Statement of Facts ¶ 68.

[6]In *Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999), the U.S. Court of Appeals for the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case[,]" and that "a *prima facie* case cannot be established on a one-size-fits-all basis." *Id.* at 411.

whether that decision was motivated by discrimination. As recently summarized in *Lucas v. County of Allegheny*, 2007 WL 2752143 (W.D. Pa. 2007):

> The purpose of this area of the law is not to second guess or show that defendant made the wrong decision in choosing among qualified applications. *See Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir.1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination] .") (*quoting Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996)); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) ( "... plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). It is to identify claims that have a sufficient evidentiary basis to permit the finder of fact to consider whether the adverse employment action was motivated at least in part by improper discrimination.

Plaintiff's PHRA claim is governed by the same substantive legal standards. *Stultz v. Reese Brothers, Inc.*, 835 A.2d 754, 759 (Pa. Super. 2003).

Defendant argues that summary judgment is appropriate on two alternative grounds: (1) that Plaintiff cannot sustain a prima facie case, and (2) that he has failed to produce evidence of pretext.[7] On this record, it is abundantly clear that Plaintiff is unable to demonstrate pretext. Accordingly, the Court will assume, arguendo, that Plaintiff could establish a prima facie case, and turn directly to the pretext analysis.

Defendant has asserted a legitimate, non-discriminatory reason for not renewing Schwoebel's contract, namely a "sustained and persistent pattern of misconduct." Defendant further asserted that Schwoebel was placed on Administrative Leave With Pay due to a thorough review of his personnel file and additional information gathering. Thus, the burden shifts to

---

[7]Defendant also contends that the PHRA claim is untimely because it is subject to a 180-day deadline while Title VII permits EEOC claims to be filed within 300 days. The Court will assume, arguendo, that Plaintiff's claims were timely.

9

Plaintiff to demonstrate pretext.

Plaintiff acknowledges that there were seventeen complaint letters from parents in his employment record, many of which involved parents who removed their children from the school to avoid having Schwoebel as a teacher. Plaintiff attempts to minimize the impact of these letters by arguing that "only" three were received during the 2004-2005 school year, and that he received parental complaints in "only" four of the sixteen years he taught (1996, 2002, 2004 and 2005). Plaintiff contends that two of the letters were received after the non-renewal decision was made. However, one of these letters discussed ongoing problems that necessitated a meeting with the principal in February, 2005. More broadly, Plaintiff contends that the complaints "obviously did not impact Plaintiff's performance as a teacher" because his students scored well on standardized tests.

None of these arguments is sufficient to create a triable genuine issue of material fact. It is not Plaintiff's role, nor the Court's, to second-guess whether or not St. Mary's was wrong in its evaluation or made a wise business decision. The record is undisputed that the actual evaluation performed by the school ranked Schwoebel as "Needs Improvement" in nearly half of the rating categories on the performance appraisal form. The 2004-2005 Annual Professional Summary Report was not an abrupt change from prior reviews. (Compiled in Exhibit G). Indeed, Plaintiff's contract was not renewed for the 2002-2003 school year, although he was subsequently asked to return. Plaintiff fails to point to any comparator teacher that was retained after similarly poor performance appraisals. He does not point to any other teacher who had a similar quantity of parental complaints, yet was retained. It is certainly plausible that a private school would decide not to renew the contract of a teacher with a history of poor performance

rather than suffer enrollment losses.

Plaintiff further argues that he was not given an opportunity to discuss or respond to the alleged fondling incident thirty-five years earlier. This argument does not demonstrate pretext. As Plaintiff recognizes, this allegation was unrelated to the non-renewal of his contract, as the school did not receive the letter in which the allegation was stated until after that decision had been made. Moreover, although this Court must consider all inferences in the light most favorable to Schwoebel in ruling on a summary judgment motion, an employer need not do so in the context of making an employment decision. As of April 11, 2005, St. Mary's was on notice of at least three separate allegations of inappropriate conduct by Schwoebel towards younger females. The school was not required to simply accept Schwoebel's denials and explanations at face value and permit him to serve out the remainder of the school year.

In summary, this record is absolutely silent as to any evidence by which a reasonable jury could conclude that Schwoebel's contract was not renewed because he is a male. Plaintiff has failed to produce any comparators with similar performance evaluations or a similar quantity of parental complaints. The ultimate decisionmaker, Father McCloskey, is also male and there is no evidence of anti-male bias by him or by the other signatory, Principal Ofcharsky. At most, Schwoebel points to a few examples during his tenure in which he was asked to "be a man" by carrying heavy objects or going outside in bad weather. However, these stray instances are entirely unconnected to the termination decision. Thus, there is no material issue of disputed fact in this case. Simply put, no reasonable factfinder could conclude, on this record, that Schwoebel was terminated due to discrimination based on his gender. Accordingly, St. Mary's is entitled to summary judgment on the Title VII and PHRA reverse sex discrimination claims.

2. Defamation Claim

Pennsylvania law establishes a seven-part test to state a defamation claim: (1) the defamatory character of the communication; (2) publication by defendant; (3) its application to plaintiff; (4) the understanding by the recipient of a defamatory meaning; (5) the understanding by the recipient that it applied to plaintiff; (6) special harm resulting to plaintiff; and (7) abuse of a conditional privilege. 42 Pa.C.S.A. § 8343(a). Truth is a complete and absolute defense to a defamation claim. *Pelagatti v. Cohen*, 536 A.2d 1337, 1345-46 (Pa. Super. 1987).

The defamation claim is based entirely upon Father McCloskey's letter to parents on April 26, 2005. Plaintiff contends that the second paragraph of the letter was defamatory because Father McCloskey "regretfully" could not discuss the confidential reasons for the termination and asked for prayers "for all concerned." Plaintiff argues that the natural implication of the letter is that he had done something heinous to a student. Plaintiff points to several instances in which recipients of the letter minimized his contact with their children.

Plaintiff relies on *Petula v. Mellody*, 588 A.2d 103 (Pa. Commw. 1991), which held: "A defamatory communication may thus consist of a statement in the form of an opinion and is actionable if it implies an allegation of undisclosed defamatory facts as the basis therefor." *Id.* at 108. Defendant cites to *Swofford v. SciCor, Inc.*, 1991 WL 259222 (E.D. Pa. 1991), which distinguished *Petula* and rejected the argument that listeners could imply that undisclosed defamatory facts formed the basis for the termination because defendants failed to mention why she was terminated.

The Court concludes that it lacks subject-matter jurisdiction to address this claim, based upon a case decided by the Pennsylvania Superior Court after the parties' briefs had been filed in

this case. The Court has a continuing obligation to sua sponte raise the issue of subject-matter jurisdiction. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir.2003).

In *Connor v. Archdiocese of Phila.*, 933 A.2d 92 (Pa. Super. August 16, 2007), the Court upheld dismissal of a defamation claim against a priest and nun arising from a parochial school expulsion decision. The Court based the dismissal on the "deference rule," a constitutional principle that prohibits courts from reviewing ecclesiastical disciplinary decisions. This doctrine deprives the court of subject-matter jurisdiction. *Id.* at 95 (*citing Gaston v. Diocese of Allentown*, 712 A.2d 757 (Pa. Super. 1998)). The Court explained that parochial schools are an integral part of instilling dogma and discipline in the Roman Catholic Church and are so intertwined with the church such that intrusion on matters of parochial school discipline places the court "perilously close to trespassing on sacred ground." *Id.* at 98 (quoting *Gaston*).

In *Connor,* the Court rejected the plaintiff's argument that defamation claims could be decided by civil courts based on neutral principles of law. The Court explained that the essence of the grievance was a challenge to the disciplinary decision of a religious organization:

> This Court would indeed be straying into "the sacred precincts" if it determined that a religious organization would be subject to civil liability for communicating to its community the existence of a disciplinary decision made and imposed by the organization. If our civil courts may not review an action that challenges the legitimacy of a disciplinary decision of a parochial school, then, in like fashion, they may not review an action that challenges the dissemination of information regarding that decision, at the very least within the narrowly circumscribed limits of the parish community.

933 A.2d at 99 (citation omitted). Based on this record, the dissemination of information regarding the school's decision to terminate Schwoebel was likewise kept within the parish community. Accordingly, Plaintiff is unable to assert a cognizable defamation claim.

In accordance with the foregoing, Defendants' MOTION FOR SUMMARY JUDGMENT (Document No. 24) is **GRANTED**. This case will be docketed closed.

SO ORDERED this 6th day of December, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Dirk D. Beuth, Esquire
Email: dbeuth@penn.com
Neal A. Sanders, Esquire
Email: lonas@earthlink.net

Thomas P. McGinnis, Esquire
Email: tmcginnis@tthlaw.com
Karin Romano Galbraith
Email: kgalbraith@tthlaw.com